We'll hear argument now in the case of Carter against Wrobel. Ms. Luce. Good morning. May it please the court. We ask this court to reverse the district court ruling that Officer Wrobel is not entitled to qualified immunity. The qualified immunity inquiry is focused on the officer's conduct and whether his actions violate the Constitution and whether he reasonably should have known his conduct violated the Constitution because of a clearly established constitutional right. And we submit both prongs of the qualified immunity tests provide a basis for qualified immunity here. Mr. Carter has not alleged conduct by Officer Wrobel that violates the Fifth Amendment because he does not allege that Mr. Carter was. Ms. Luce, let me ask you a question of fact that I will also ask Mr. Ratzak. I just want to know what the record shows. Has there been a claim that Officer Wrobel lied about what he did during the interrogation? No, Your Honor, this case isn't about him lying during the interrogation. Because if I if I were trying to find the best case for a Miranda violation being a constitutional being a source of damages right then and there, it would be somebody didn't give the Miranda warnings and then lied and said he had leading the state judge to introduce the evidence. No, Your Honor. As you understand it, there's no such claim here. Right. In fact, I will verify this with Mr. Ratzak. Most of the allegations come from Officer Wrobel's testimony himself at the at the pretrial hearing and at the criminal trial. Mr. Carter has not alleged conduct by Officer Wrobel that violates the Fifth Amendment because he does not allege that Mr. Carter was compelled by Officer Wrobel to be a witness against himself. He in fact accepts the premise that there was no compelled statement. The statement was made at the outset of a search conducted pursuant to a search warrant that's not challenged here where Mr. Carter lived when Officer Wrobel asked if there was anything illegal in the house and Mr. Carter said some bullets. Under your argument that there has to be something compelled or the statement has to be coerced or compelled, this issue was decided at the motion to dismiss stage. So we have to take everything in all of the allegations in the light most favorable to Mr. Carter. And I understand that he did not use the word compelled or coerced in his complaint. But drawing all inferences in his favor, he does allege that the state court reversed his conviction for violating his Fifth Amendment rights and sent it back to the court. Can we reasonably draw the inference from that fact that there was a Fifth Amendment violation? Well, no. The state court actually concluded that the Miranda rule had been violated. I'm going on what was alleged in the complaint. And there are allegations about a Miranda violation, but there's also a general statement and a general issue about a violation of the Fifth Amendment rights. So can we draw that inference? No, Your Honor, I don't think so. We have, of course, the appellate decision itself, which was based on finding that Miranda had been violated. And also, even considering all the facts that we know underlying what occurred that day, there was still no violation of a clearly established right when you consider the factors surrounding the search that the appellate court relied on and that are in the complaint. There are no cases finding a constitutional violation in remotely similar circumstances. So there's no violation of a clearly established constitutional right. In fact, I would submit if you're looking at the cases that, you know, have discussed Fifth Amendment rights and whether or not, you know, compared to when Miranda right has been violated, which, of course, that rule sweeps more broadly than the Fifth Amendment itself. But the most analogous case I would submit is Oregon v. Elsad. In that case, there was an officer who had a warrant to arrest, sort of like the warrant to search here. And he entered the house and asked the question, do you know why we are here? And said, I think you were involved in a burglary at such and such's house. Mr. Elsad said, yes, I was there. That statement, the Supreme Court said, was not voluntary. It was coerced. And it did not violate the Fifth Amendment. It may well have been the sort of custodial interrogation that should have triggered Miranda warnings, but it was not a constitutional violation. What about our case law in Sorenberger v. Johnson, where we have essentially said there could be a Fifth Amendment violation when Miranda rights were not given, regardless of whether the statement was coerced or obtained? In Sorenberger, there were allegations of compulsion. So the municipal defendant in that case did not make, and this court did not decide the argument we are making here, that allegations of compulsion are required. But that wasn't part of the court's holding. The court didn't specifically say or acknowledge in addressing the Miranda aspect that there were allegations of compulsion. That is the case. There may have been some assumption. But my point is that that issue was not raised before the court. The municipal defendants, of course, since there were allegations, indeed, evidence of compulsion in that case, that was not the argument that the municipal defendants made. They had to accept that there was evidence of compulsion. And so the issue that was raised instead was, and which was decided by this court, was whether the use of a statement in pretrial proceedings that had taken place there satisfied the Chavez standard of use in a criminal case. And this court decided that it did. And we submit that holding does not foreclose our argument here. And you also asked about Johnson versus Winstead. And first, I point out that that was a more recent decision, 2018, that would not have put the officer on any kind of notice back in 2013 when this incident occurred. And so, therefore, it is not helpful in that qualified immunity analysis. But also, I would point out that, though the court, some aspects of the opinion may have assumed such a cause of action there, it specifically did not address the defendant's argument. There's a quote at the end of the opinion. The court did not address that money damages are not available for a Miranda violation because this argument, too, is unpreserved. So we submit that. But also, the court didn't reach the issue. But the issue is squarely presented in this case. I see that I'm running into my rebuttal time. So I will reserve the remainder of my time. Certainly, counsel. Mr. Rasek. Good morning, Your Honor. It's Michael Rasek here on behalf of the plaintiff's athlete. And you already know what I'm going to ask you. I do. And I can tell you, Your Honor, it's not alleged in the complaint. I don't know if there is, in fact, underneath it all, was any claim that the officer lied. I can't tell from what I saw on the record. I will obviously look at it. Okay. And no hint of that in the state litigation, I take it? Not that I can find, Your Honor. Okay. Thank you. All right. So, just to clarify, I want to go back, like Dickerson did, to the source material to Miranda. Because we're talking about coercion. And I think maybe some of the question is, what do we mean by coercion? And as Dickerson did, if you look back to Miranda, it said basically all custodial interrogation, which is what we have here. I mean, eight officers broke in and handcuffed them and then asked them the question. It's coercive. And the courts, all the courts, the Supreme Court quarrels. Now it sounds like you're disagreeing with Chavez, which distinguished between coercion and Miranda problems. It tried to with four judges. But going back, if, in fact, any custodial interrogation, and we're limiting it to custodial interrogation, is inherently coercive, the board is, from all these issues, can disappear. Let me tell you what my biggest problem with your position is in this case. It seems to me you have the same kind of events that were the subject of the Ninth Circuit litigation in TICO. And TICO split three to seven. Three judges in TICO took your position. Seven judges in TICO took the other side. My question is, doesn't that establish that we have legal uncertainty over this problem? The position you're taking is perfectly respectable. It has the support of a court of appeals. The position that Officer Robel is taking is perfectly respectable. It has the support of other judges. And normally we would say, as actually the Supreme Court has said a few times, that when federal judges disagree about a legal issue, that's the time when there is immunity, that it is inappropriate to make the officer pay for choosing the wrong side of an issue that has divided federal judges. So that's my worry here. We've got a clear division of views on the federal bench about this very issue. And honestly, I could not quarrel with that. We have the Hannon case that stands out against us. With respect to the division or the tension in the TICO court, I would disagree in the sense that the court did not have an en banc hearing. They had denied en banc. So what we have is a 3-0 decision. You have three judges expressing one view and seven judges expressing a different view. By the way, have you checked recently to see whether a petition for certiorari has been filed? I asked counsel yesterday and they said it had not, but they anticipated that it would be. Plaintiff's counsel said they were told by the opponents that it would be filed. I did a count and it looks like the defendants have until November 1st to file a petition. That's what I was told. With respect to the division, the point is what the law is in the circuit in which the officer is. And here, Sornberger, we believe, and I understand that one of the authors of that opinion is part of this panel, but in terms of what that court meant or what it was addressing, even the dissent in the en banc hearing of TICO agreed that Sornberger addressed a pure situation where there was simply a failure to give a Miranda warning without physical compulsion. And as Judge St. Eve noted, Sornberger contained two elements. One of them was an allegation of some kind of coercion. It sounded more like psychological coercion, not the physical coercion we're usually used to. But it all specifically said the issue was whether coerced or obtained without Miranda warnings. That court appeared to very distinctly draw two different arenas. And my point is I'm not sure those two arenas necessarily need to be kept separate. If it's custodial, it's coerced. That's what the Supreme Court's always said. But even if we go that route, Sornberger said, here's the consequences. Let me ask a version of my question in a slightly different way. I take it as clear from Chavez that if a statement is obtained without giving Miranda warnings but never introduced at trial, the police officer is not liable for anything. I agree. Right? Now, I want to make sure I understand what happened in this case that caused the statement to be introduced at trial. This is actually why I asked about whether the officer was telling the truth or lying. There were at least two other actors involved. The prosecutor decided to introduce it knowing that no Miranda warnings had been given. And then a state judge decided that it was properly introduced. And then, of course, the court of appeals reversed. Yes, sir. The question is why should an officer become liable because of the independent actions of the prosecutor and the judge who knew the truth about what had happened? The officer also knew the truth about what happened. And according to— Address my question, please. Why should the independent acts of the prosecutor and the judge be the things that expose the police officer to liability and damages? Because those acts were foreseeable to the officer. Why? Why? If there was a violation of Miranda, what an officer should foresee is that the statement will not be admitted because that's the holding of Miranda. Right? What you've got is an independent choice by the prosecutor, who is immune from all liability, and a choice by the judge, who is immune from all liability. Loading the whole thing onto the officer seems a very curious way to set up the legal system. I don't know that we unload the whole thing on the officer. The officer is the only one who doesn't have immunity because of Miranda. Indirectly, we're unloading it onto the community, keeping in mind that the city is also a defendant here. This officer is being singled out. I agree. And maybe there should be some repercussions to the people above him in the chain of command. But I believe, I thought it was a Jones case, as already suggested, not to say it, as the district court judge here said, you are liable for the foreseeable results of what you do. And the police officer, I would disagree with that, Your Honor. A police officer, if he takes the statement and passes it on to the district attorney without saying there was a Miranda warning, I don't know what happened there, should foresee that it might be used. Because these cases without warnings are coming up all the time. So if we're going to look what the practice is, any police officer should know that if he or she doesn't do everything right, there's going to be repercussions down the road. That's why we're here, and that's why takeover was there, and that's why all the other cases were. That's why Sornberger was there. Your Honor's logic, I understand and appreciate Your Honor's logic. It would have undercut Sornberger the same way, I believe. So far, to my knowledge, nobody has adopted that decision. Do you have evidence of coercion or compulsion here beyond the custodial interrogation? No, there's no, the complaint does not allege, I presume Your Honor's talking about, no physical coercion. There's no allegation in the complaint of a beating or, I'm trying to think. Or psychological pressure. Psychological, there's no allegation that he was put in the room for 24 hours and kept without contact. No, the coercion, the compulsion all comes from what the courts have called the coercion and compulsion inherent in a custodial interrogation. Unless the court has further questions, we look pretty much to the Sornberger case and say it's been decided. Thank you, Mr. Rasek. Ms. Luce, anything further? Yes, Your Honor. First of all, to address your question about whether or not Officer Robel lied at the hearing, that is in the complaint. If you look in the appendix to our brief at 810, paragraph 20 discusses that Officer Robel testified at the suppression hearing and admitted the events above mentioned, including that he had asked Carter if he had anything illegal without providing Miranda warnings. So, and then beyond that, I would like to point out that Mr. Carter in his brief actually acknowledges that his answer to that question was not coerced. That's on page six. His defense instead has been that his Fifth Amendment claim can be based on a failure to give Miranda warnings alone without coercion. And with respect to Officer Robel's testimony, he also acknowledges that Officer Robel is not being sued for testifying, but rather for improperly eliciting the statement. So the question is whether those actions are a violation of a clearly established constitutional right. And Dickerson, at best, adds more confusion to the state of the law on this because it did not change or clarify anything in the context of Section 1983 litigation. It was about whether Congress could undo the Miranda exclusionary rule legislatively, and the court said no. The court intentionally stopped short of holding that the failure to give Miranda warnings violates the Constitution or that Miranda rights themselves are a constitutional right. So if that holding has any effect on Section 1983 litigation, it is far from clear. And of course, since then, we've had Chavez and Patain that have come down as well. So at best, that case injects confusion alongside the other holdings. And also with respect to TICO, I would note, in addition to the division within the court itself, that TICO stands alone among the circuits in that holding. If there are no further questions, we ask that this court reverse the decision of the district court denying qualified immunity. The reaction to kind of a threshold question. Was this an interrogation that was for purposes of the Fifth Amendment? For purposes of qualified immunity, we submit it is... For purposes of the Fifth Amendment. Was the question that was asked, you got anything illegal around here? Was that an interrogation? It may have been a custodial interrogation for purposes of Miranda. You think... We're not... Why I ask is there are some cases that hold that as an extension of the so-called public emergency exception. A question like that as part of the execution of a valid search warrant is not an interrogation. It's simply an accommodation to the person being searched to point them in the right direction rather than have his home wrecked. Right, I understand. Yes, that's the quarrels exception that may... There is testimony from Officer Robel that that was part of the reason why he asked the question was for safety reasons and to help make the search go more smoothly. Yeah. I think my time is up. I don't know if you would like me to address that further. I'd like your reaction to that, to the cases that hold it, yeah. Well, I mean, Quarrel itself holds the exception to the Miranda rule. One of the very reasons it does so is because the Miranda rule does not encapsulate the Fifth Amendment. Even though there has not been a Miranda warning given in that case, that was not itself a Fifth Amendment violation. So the court felt that it could address whether the exclusionary rule would apply in that case. And it didn't have to where there wasn't an actual Fifth Amendment violation. And that's the same thing we submit here. Regardless, there was no Fifth Amendment violation. So no, there should be no Section 1983. Thank you. Thank you very much. Thanks to both counsel. The case is taken under advisement and the court will be in recess.